IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Benjamin F. Carter,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | 1:21cv307 (LO/IDD) |
| ) | |
| **Miranda Stith,** *et al.*, ) | |
| **Defendants.** ) | |

MEMORANDUM OPINION

Benjamin F. Carter, a Virginia inmate proceeding *pro se*, moves for partial summary judgment, seeking judgment as a matter of law on his due-process claims against Officer Lawrence and his negligence claims against Zachary Davis and H. Burrows.[1] *See* Dkt. No. 44. Defendants oppose this motion. *See* Dkt. No. 51. Carter also moves the Court to reconsider its Order denying his motion for a preliminary injunction and temporary restraining order (TRO), in which he sought relief from harm resulting from the defendants' alleged conduct at issue in the motion for summary judgment. *See* Dkt. No. 57. Because the undisputed evidence does not demonstrate that Carter is entitled to judgment as a matter of law on the due process and negligence claims, the motion for partial summary judgment will be denied. Further, this ruling buttresses the Court's finding that emergency injunctive relief was not warranted in this case, and so the motion for reconsideration also will be denied.

---

[1] Defendants also construe Carter's motion as moving for summary judgment on his claim for abuse of legal process. The Court rejects this characterization because it did not conclude that the abuse-of-process claim could proceed until May 19, 2022, *see* Dkt. No. 54, months after Carter filed his motion for partial summary judgment on February 14, 2022, *see* Dkt. No. 44.

# I. Motion for Partial Summary Judgement

## i. Background

*A) The Amended Complaint*

The claims at issue in Carter's motion for partial summary judgment involve disciplinary proceedings that took place at Greensville Correctional Center (GCC). Carter first claims that Hearing Officer Lawrence deprived him of procedural and substantive due process during disciplinary hearings for three offenses. Carter principally alleges that Lawrence knowingly disregarded evidence of his innocence to find him guilty, and that he was not given adequate notice in advance of the hearing for one of the offenses.

Second, Carter claims that H. Burrows and Zachary Davis performed their job duties negligently when handling Carter's disciplinary appeals. Carter alleges that Burrows acted with negligence by giving Carter's appeal packets to another prisoner also named "B. Carter." Carter further alleges that he reported the due-process violations to Davis, and he neglected his job duties by failing to respond appropriately.

*B) Summary Judgment Record*

Throughout July 2019, Officer Lawrence presided over Carter's disciplinary hearing for the three offenses at issue in this lawsuit: (1) Offense Code 212, GCC-2019-3803, for threatening bodily harm; (2) Offense Code 111B, GCC-2019-3763, for stealing state or a person's property; and (3) Offense Code 122D, GCC-2019-3932, for refusing to submit to a drug test. *See* Dkt. No. 44 ¶ C; Davis Aff. ¶ 4. Carter avers that Lawrence did not provide him with prior written notice for the theft-charge proceeding. *See* Dkt. No. 44 ¶ D. Ultimately, after a hearing, Carter was found guilty for each offense. *See id.* ¶¶ D, E.[2] Carter avers that he did not receive a written

---

[2] Most of the evidence about the disciplinary proceedings comes from Carter's verified complaint, Carter's verified motion for summary judgment, and Zachary Davis's affidavit. But

2

explanation for the decisions, and that the rulings were not based on any evidence in the record. *See id.* ¶ F. Additionally, Carter attests that H. Burrows failed to provide him with appeal packets for the disciplinary proceedings. *See id.* ¶ H.

Meanwhile, on August 15, 2019, a week after the disciplinary hearing concluded, Carter was transferred from GCC (where he had been in segregation since July 18, 2019) to River North Correctional Center (RNCC). *See id.* ¶ I. GCC is a security-level 3 facility, whereas RNCC is a security-level 4 facility. *See id.*

Carter attests that he sent three appeals—one for each disciplinary offense—to Zachary Davis on October 15, 2019. *See id.* ¶ J. According to Carter, Davis initially "declin[ed] to follow" Virginia Department of Corrections (VDOC) operating procedures for handling offender discipline and, further, "declin[ed] to properly investigate" the appeal. *See id.* ¶ K.

Carter remained at RNCC, where, he avers, his cellmate attacked him on December 19, 2019. *See id.* ¶ L. Carter attests that he received a disciplinary charge "for defending himself in [that] physical altercation" and was transferred to Red Onion State Prison, a supermax, security-level 5 facility. *See id.* ¶ M. The disciplinary offense report tells a much different story. *See* Dkt. No. 4-1, Pl. Ex. I. The reporting officer, Lieutenant King, observed another inmate, D. Panton, "bleeding from his face standing in the cell" and "missing a large piece of his nose which appeared to have been bitten off"; Carter, meanwhile, was in the cell cleaning up blood. *Id.* Through his own and other witness observations, King determined that Carter had attacked Panton while intoxicated. *Id.* King further reported that "[w]ounds and scrapes on both Offenders

---

some of Carter's disciplinary records can be found in exhibits that he submitted in support of his motion for a preliminary injunction and TRO. One exhibit, the appeal response dismissing the drug-test-refusal charge, notes that the penalty imposed was a $5.00 fine. *See* Dkt. No. 4-1, Pl. Ex. D. Another exhibit, a February 28, 2020, letter from Zachary Davis notifying Carter that that the convictions were administratively overturned, suggests that a fine was the penalty imposed for all three offenses. *See id.* Pl. Ex. G.

indicate that Offender Panton attempted to defend himself and in the process of the altercation Offender Carter bit off [a] section of his nose." *Id.*

Then, on February 13, 2020, Carter received a copy of the "Receipt of Logs," which showed that he never received his appeal packets for the three offenses. *See* Dkt. No. 44 ¶ N. Carter avers that he notified Davis and asked to have his security level lowered back to level 3. *See id.* By the end of February, Davis had administratively overturned the three convictions. *See id.* ¶ O. Carter attests that Davis had concluded that "the record showed no 'details' to support a conviction" for the three offenses. *See id.* Davis attests that the theft and threat charges were overturned because the appeal paperwork had accidentally been given to another inmate with a similar name, and that the drug-test-refusal charge was overturned "for policy violations and because the reporting officer no longer worked for VDOC." *See* Davis. Aff. ¶ 4.

Despite the favorable appeal, Carter avers, he has not been returned to a security-level 3 facility. *See* Dkt. No. 44 ¶ P. According to Carter, since his transfer out of GCC he has been "diagnosed with anxiety and depression disorder, paranoia, post-traumatic stress disorder, [and] anti-social personality disorder." *See id.* ¶ Q.

### ii. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Hupp v. Cook*, 931 F.3d 307, 317 (4th Cir. 2019) (internal quotation marks and citations omitted). In evaluating a summary judgment motion, the Court views the evidence, and draws all inferences,

in the light most favorable to the nonmoving party, here, defendants Officer Lawrence, Zachary Davis, and H. Burrows. *See E.W.* ex. rel. *T.W. v. Dolgos*, 884 F.3d 172, 178 (4th Cir. 2018).

### iii. Analysis

*A) Due-Process Claims against Hearing Officer Lawrence*

Carter argues that the undisputed evidence demonstrates that Officer Lawrence presided over his disciplinary hearings in a manner that violated his procedural and substantive due-process rights. Lawrence raises two overlapping counterarguments. First, Lawrence argues that Carter ultimately received no penalty for the disciplinary charges because they were overturned, and so he cannot assert that he was deprived of any liberty interest. Second, Lawrence contends that any defects in the proceedings were cured by Carter's successful appeals.[3]

The Due Process Clause of the Fourteenth Amendment provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law. U.S. CONST. amend. XIV, § 1. "[T]hose who seek to invoke its . . . protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Id.* (internal citations omitted). "When a state grants a right or entitlement to a condition of incarceration or a freedom, the inmate acquires a liberty interest by virtue of that right." *See O'Bar v. Pinion*, 953 F.2d 74, 84 (4th Cir. 1991).

---

[3] Defendants dispute that there were defects in the proceedings, specifically that Officer Lawrence never gave Carter a written explanation of the decision and that the guilty verdicts were not based on any record evidence. But they have not cited to any materials in the record that contest Carter's sworn declaration. Thus, this objection does not comply with Federal Rule of Civil Procedure 56(c).

5

Here, Carter asserts that he retains a liberty interest in remaining in a security-level 3 facility. He urges that it is irrelevant that his convictions were overturned because he is still confined in a higher-security prison. But contrary to Carter's contention, Virginia inmates have no constitutional or state-created right to be classified at a particular security level or to be housed in a specific penal institution. *See McKune v. Lile*, 536 U.S. 24, 39 (2002); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules."); *Waters v. Bass*, 304 F. Supp. 2d 802, 805 (E.D. Va. 2004) ("Virginia's prison transfer regulations do not create any liberty interest in a specific housing assignment, as prison officials have, and reasonably must have, broad discretion under the regulations to determine the facility at which an inmate is housed."); *Black v. Willis*, No. 2:02cv370, 2003 WL 23194275, at *4 (E.D. Va. Jan. 21, 2003) (holding that neither the Due Process Clause nor Virginia law creates a liberty interest in prisoner's security classification).

Still, Carter could proceed under a theory that "a Virginia law or policy provid[es] him with an expectation of avoiding the conditions of his confinement" at his higher-security institution, and "that those conditions are harsh and atypical in relation to the ordinary incidents of prison life." *Prieto v. Clarke*, 780 F.3d 245, 252 (4th Cir. 2015).

Carter has not demonstrated that he has been subjected to those kinds of conditions. He principally points to being afforded fewer privileges, including opportunities for educational programming and work assignments; additional recreation time and canteen purchases; in-person religious gatherings; and contact visitation. He has not identified any Virginia law that gives prisoners an expectation to have, and avoid losing, those privileges.

6

Moreover, there is insufficient evidence in the record to compare the conditions Carter faces now to the ordinary incidents of prison life. To make this assessment, the Court must first "determine what the normative 'baseline' is: what constitutes the 'ordinary incidents of prison life' for *this particular inmate*." *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (quoting *Prieto*, 780 F.3d at 253). Thus, the Court must assess what punishment was "contemplated by the original sentenced imposed." *Id.* at 529 (quoting *Prieto*, 780 F.3d at 254). Here, the record lacks evidence about Carter's conviction and sentence, leaving the Court unable to conduct this analysis. Carter therefore has not met his burden to demonstrate that his current conditions of confinement violate his due-process rights.

  B) *Negligence Claims against Zachary Davis and H. Burrows*

  i. *Sovereign Immunity*

Carter next argues that the undisputed facts demonstrate that Zachary Davis and H. Burrows acted negligently in performing their job duties while resolving his appeals from the three disciplinary convictions. Defendants object, first arguing that sovereign immunity shields them from the negligence claims.

Virginia has expressly consented to be sued for some torts through the Virginia Tort Claims Act, Va. Code. §§ 8.01-195.1 to 8.01-195.9. Nevertheless, sovereign immunity still applies when the alleged negligent act was discretionary rather than ministerial. *See Colby v. Boyden*, 400 S.E.2d 184, 186 (Va. 1991); *Savage v. Cnty. of Stafford*, 754 F. Supp. 2d 809, 817 (E.D. Va. 2010). Courts evaluate four factors to determine whether sovereign immunity applies:

> (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion.

7

*McBride v. Bennett*, 764 S.E.2d 44, 46 (Va. 2014). Defendants bear the burden of proof on this claim of immunity. *Pike v. Hagaman*, 787 S.E.2d 89, 92 (Va. 2016).

Davis and Burrows argue that the first two factors weigh in favor of applying sovereign immunity because the Commonwealth has a substantial interest in securely managing its state prisons, including the administration of disciplinary proceedings and inmate housing. The Court does not disagree that the Commonwealth has a strong interest in the security and administration of its prisons. *See Prieto*, 780 F.3d at 425 (citing *Wilkinson*, 545 U.S. at 227). But in making this argument, the two defendants have omitted a description of their actual *functions* in executing the disciplinary appeal process. Without any evidence attesting to their individual job functions in the appeal process, the Court cannot assess the Commonwealth's interest in their execution of those functions.

Concerning the third factor, Davis and Burrows argue that the Commonwealth exercises a high degree of control over them because they must follow numerous VDOC policies and regulations when administering disciplinary procedures. The Court agrees that this factor weighs in defendants' favor. *See Gargiulo v. Ohar*, 387 S.E.2d 787, 790–91 (Va. 1990) (concluding that Commonwealth exercised great degree of control over state employee/student in medical research program given that "program was devised, sponsored, directed, and funded by state entities pursuant to authority expressly conferred by the General Assembly); *see also* VDOC Operating Procedure § 861.1 (offender discipline procedures).

Lastly, defendants contend that the acts Carter complains of involved the use of judgment and discretion. While the record establishes that this may be true for Davis, it does not for Burrows. Davis attests by affidavit that "[w]hen issues are brought to my attention on appeal in the disciplinary unit, I do my best to make sure VDOC policy is appropriately applied," and

8

"[w]hen that means overturning a charge in the inmate's favor, that is what I do." [Davis Aff. ¶ 11]. Deciding whether to uphold or reverse a charge likely involves the use of judgment and discretion, but, as highlighted above, Davis has not explained his role, and how he carries out his duties, in the disciplinary appeal process. As for Burrows's alleged duty to deliver the appeal packets to Carter, she has not explained how this task was not ministerial.

On the balance, the Court concludes that neither Davis nor Burrows has met their burden to demonstrate that they are entitled to sovereign immunity on the negligence claims. Weighing heavily in this conclusion is that defendants have not submitted testimony or other evidence explaining the specific nature of the functions they perform in the disciplinary-appeal process, and assessing these functions is crucial to the Court's analysis.

*ii. Merits*

Still, even if sovereign immunity does not apply, Carter has not met his burden on the merits of the negligence claims. Carter contends that Burrows acted negligently by giving his appeal packets to the wrong inmate, and that Davis, initially, failed to investigate the due-process violations after Carter reported them. As a result, Carter asserts, he was "deprived of his SL3 liberty" and transferred to a security-level 4 prison, after which he was diagnosed with several mental-health conditions. *See* Dkt. No. 44, at p. 13.

In Virginia "[a] plaintiff who seeks to establish actionable negligence must plead the existence of a legal duty, violation of that duty, and proximate causation which results in injury." *Collett v. Cordovana*, 772 S.E.2d 584, 588 (Va. 2015) (internal citation omitted).

Defendants' counterarguments focus on the causation and injury elements of Carter's negligence claims, asserting that Carter has not demonstrated that he suffered a compensable injury caused by Burrows and Davis. "The proximate cause of an event is that act or omission

9

which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003) (internal citation omitted). To demonstrate causation, there must be sufficient evidence "to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference." *Id.* (internal citations omitted). Here, Carter has not submitted any evidence, such as medical records or physician testimony, to demonstrate that he suffers from diagnosed mental-health conditions that he would not have developed without defendants' supposed negligence. Moreover, as the Court already explained above, Carter has no liberty interest in his security classification and housing assignment. Thus, he cannot invoke his transfer to support the injury element of his negligence claim. Carter therefore has not demonstrated that the undisputed facts prove that Davis and Burrows are liable for committing negligence.

## II. Motion for Reconsideration

Carter has also filed a motion labeled "Re-Motion in Response to Denied TRO/Preliminary Injunction," which asks the Court "to reconsider granting his TRO/Preliminary Injunction due to a 'clear error causing a manifest injustice.'" *See* Dkt. No. 57. The Court construes this filing as a motion for reconsideration under Federal Rule of Civil Procedure 54(b), which authorizes district courts to reconsider and modify interlocutory judgments. *See U.S. Tobacco Coop. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 256 (4th Cir. 2018).

In Carter's motion for a preliminary injunction and TRO, he moved for an order directing defendants to lower his security classification and transfer him to a security-level 3 facility. *See* Dkt. No. 41. He argued that he faced irreparable harm because he is afforded fewer privileges at higher-security prisons. *See* Dkt. No. 42. The Court denied the motion, concluding

that Carter had not demonstrated that his current security classification and housing assignment would cause him to suffer any constitutional harm. *See* Dkt. No. 56.

Carter now argues that the Court erred by concluding that he had not demonstrated irreparable harm. *See* Dkt. No. 57. He reiterates that he has been harmed, and continues to suffer, because he has not been transferred to a security-level 3 facility. *See id.*

Carter has not demonstrated that the Court should modify its earlier ruling. An interlocutory order may be revised if the movant demonstrates a "clear error causing manifest injustice." *U.S. Tobacco Coop*, 899 F.3d at 257 (internal citation omitted). This kind of error is not found if the ruling in question is "just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong." *Id.* at 258 (internal citation omitted). Here, given the summary-judgment finding that Carter has not put forth evidence demonstrating that he retains a liberty interest in avoiding the conditions of his current confinement, the Court cannot conclude that its previous ruling was dead wrong. Thus, the motion for reconsideration must be denied.

### III. Conclusion

For the reasons outlined above, and through an Order that will issue alongside this Memorandum Opinion, the Court will deny plaintiff's motion for partial summary judgment, *see* Dkt. No. 44, and plaintiff's motion for reconsideration, *see* Dkt. No. 57.

Entered this 6th day of October 2022.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

11